UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. |
| | ) | 3:17-CR-170-CHB-LLK-3 |
| v. | ) | |
| | ) | |
| ERIC R. ESTEY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant/Movant Eric Estey's Objections, [R. 639], to the Magistrate Judge's Report and Recommendation ("R&R"), [R. 633], which recommends denial of Estey's original and amended motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [R. 613 (Original Motion); R. 617 (Amended Motion)]. Also before the Court is Estey's Motion for a Stay Pending Supreme Court's Decision ("Motion for Stay"), [R. 643]. For the reasons set forth below, the Court will overrule Estey's objections and, as supplemented by this Order, adopt the Magistrate Judge's R&R as the findings of fact and conclusions of law of the Court. The Court will also deny his Motion for Stay.

**I.**

In December 2017, Estey and ten others were indicted for conspiracy to possess with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846.  [R. 1 (Indictment)]; *see also* [R. 147 (Superseding Indictment)]. In November 2019, Estey reached a written agreement with the government to plead guilty to the sole count in the Superseding Indictment charging him with that offense. [R. 307 (Plea Agreement)]. As part of the agreement Estey acknowledged that he "will plead

guilty because he is in fact guilty of the charges." *Id.* at 1.  The binding Rule 11(c)(1)(C) plea agreement expressly provided that "at the time of sentencing, the United States and the Defendant, Mr. Estey, will . . . agree that a sentence of 180 months' imprisonment is the appropriate disposition of the case." *Id.* at 4.  Estey also broadly waived his right to directly appeal or collaterally attack his conviction or the agreed-upon 180-month sentence:

> Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant knowingly and voluntarily waives the right (a) to directly appeal his conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742 and (b) to contest or collaterally attack his conviction and the resulting sentence under 28 U.S.C. § 2255 or otherwise. Defendant specifically waives on appeal or in a collateral attack any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

[R. 307, p. 5].  Finally, the plea agreement concluded with what is known as an "integration clause," where the parties agreed that:

> This document and the supplemental plea agreement state the complete and only Plea Agreements between the United States Attorney for the Western District of Kentucky and defendant in this case, and are binding only on the parties to this Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that are signed by all parties or on the record in Court. No other promises or inducements have been or will be made to defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

[R. 307, pp. 5–6].

The Court held a change of plea hearing on November 18, 2019.  *See generally* [R. 564 (Transcript of Hearing)].  During that hearing, Estey confirmed to the Court that he understood the charges against him and the rights he would be waiving by pleading guilty. *Id.* at 8–14. The Court also confirmed that Estey understood that, under the plea agreement, the parties agreed to a 180-month sentence, which was binding upon the Court if the agreement was accepted. *Id.* at

18–19. Finally, Estey specifically acknowledged that he was waiving his rights to appeal and collaterally attack his conviction and sentence. *Id.* at 15–19.

The Court held a sentencing hearing on October 29, 2020. [R. 513]. At the conclusion of the hearing, the Court imposed the agreed-upon sentence of 180 months imprisonment to be followed by a five-year term of supervised release. [R. 514 (Judgment); R. 530 (Sentencing Transcript)]. Estey appealed, but he later voluntarily dismissed the appeal in March 2021. [R. 519; R. 572].

On September 20, 2021, Estey filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 on a single ground. [R. 613]. With the Court's permission, Estey later filed an amended petition asserting eight claims for relief. [R. 617]. The Court referred Estey's motion to United States Magistrate Judge Lanny King to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 619]. The parties engaged in extended briefing. *See* [R. 622 (Response); R. 627 (Reply); R. 631 (Order granting leave to file Sur-Reply); R. 632 (Sur-Reply); R. 634 (Response to Sur-Reply)[1]]. On November 17, 2022, Magistrate Judge King issued his R&R, in which he recommends that Estey's § 2255 motion be denied and that the Court decline to issue a Certificate of Appealability ("COA"). [R. 633].

The Court later denied Estey's § 2255 motion when he did not file any objections to the R&R. [R. 635; R. 636]. However, Estey promptly sought relief from the Court's Judgment, stating that he never received the Magistrate Judge's R&R. [R. 637]. The Court granted Estey's request and allowed him time to file objections to the R&R. *See* [R. 638]. Estey filed a timely

---

[1] Magistrate King did not grant Estey leave to file this response to the government's sur-reply, rendering its filing unauthorized. Further, Estey filed his response three weeks after the Magistrate had already issued his R&R, titled "Findings, Conclusions, and Recommendations." The Magistrate therefore did not consider its contents in issuing the R&R, nor does the Court to the extent of its *de novo* review of the same.

Objection, [R. 639], as well as an untimely and unsigned document he titled "Additional Evidence," [R.640].  The government has filed its response, [R. 641], to which Estey has replied. [R. 642].  The matter is therefore fully briefed and ripe for decision.

## II.

Estey's amended § 2255 motion, [R. 617], sets forth eight claims.  These include, recited *verbatim* from his motion:

Ground One:  Lack of Subject-Matter Jurisdiction . . . .

The U.S. Government had no jurisdiction to prosecute Mr. Estey. Mr. Estey did not violate any federal law within U.S. territory or other U.S. property belonging to the United States. The U.S. Government shows no evidence that this crime was committed within its jurisdiction, nor does it show any powers granted to them by the U.S. Constitution to usurp that authority from the states' jurisdiction without Due Process. . . .

Ground Two:  Illegal search and seizure . . . .

U.S. Government illegally gathered evidence and utilized this illegally obtained evidence to prosecute Mr. Estey. This investigation also utilized illegal tactics to obtain such evidence such as warrants signed by officials of the court that had no jurisdiction within the jurisdiction Mr. Estey was prosecuted . . . .

Ground Three:  Investigatory powers malfeasance . . . .

U.S. Government knowingly presented evidence not founded on clear and convincing standards. U.S. Government knowingly fabricated amounts of money for fabricated purposes (ipse dixit). U.S. Government knowingly fabricated drug amounts for purposes of Sentencing Guidelines as opposed to alleged factual drug amounts for prosecuting purposes alone . . . .

Ground Four:  Prosecutorial Misconduct . . . .

Prosecutor knowingly received evidence from and sought after evidence they knew to be fabricated for purposes to illegally prosecute, detain and send for harsher Sentencing Guidelines against Mr. Estey.  Prosecutor knowingly provided information to a grand jury for indictment without a grand jury array provided to Mr. Estey.  Prosecutor did not provide an examining trial.  The prosecutor violated separation of powers by holding the grand jury records.  The prosecutor did not receive a delegation of authority to convene a grand jury.  No quorum exists on record (the docket sheet) as required by Fed. R. Crim. P. 6.  No evidence exists on

the record (the docket sheet) that the indictment was presented in "open court" (judge, prosecutor, defendant, and transcriber). Prosecutor knowingly failed to add stipulations into plea agreement as promised nor took opportunity to make court aware of the promise made to Mr. Estey in reference to questionable drug amounts. Prosecutor knowingly used questionable and fabricated drug amounts to ensure that the court's 'hands would be tied' in fairly sentencing Mr. Estey. . . .

Ground [Five]:  Ineffective Assistance of Counsel

Mr. Estey's attorney knowingly failed to interview vital witnesses that would have proven vital information favorable to Mr. Estey's defense.

Mr. Estey's attorney knowingly failed to object to and/or suppress evidence such as but not limited to fabricated cash amounts, fabricated drug amounts, etc.

Mr. Estey's attorney knowingly failed to argue for the "safety valve" statute as Mr. Estey pleaded with him to do.

Mr. Estey's attorney knowingly failed to prepare a true defense as priority but rather sought to "make a deal."

Ground [Six]:  Denial of Discovery

The U.S. Government did violate Mr. Estey's rights by not allowing him to receive or view evidence that would have allowed him to prepare a proper defense. And that his attorney did not demand this to help Mr. Estey in this endeavor to defend his innocence. Therefore, denying Mr. Estey of rights within the Constitution and Federal Rules of Criminal Procedure."

Ground [Seven]

That Mr. Estey's offense level was raised due to unethical practices by the investigators and the U.S. Government by seeking to utilize false and misleading information for purposes of enhancing Mr. Estey's offense level. Therefore, abusing the "good faith" it has before the court and arguing fabricated information with an "ipse dixit" expectation before the court.

Ground [Eight]

That the U.S. Government conspired to deceive Mr. Estey and the court by promising him via his attorney that the drug amount "would be argued in court." But then not providing a stipulation in the plea agreement nor honoring its promise to Mr. Estey by making the court aware."

*Id.* at 4–12.  As the foregoing makes clear most, but not all, of Estey's claims are stated only in the broadest and most conclusory terms, providing neither specific facts nor legal argument to clarify their basis or nature.

The Magistrate Judge recommends denial of the first two grounds (lack of subject matter jurisdiction and illegal search and seizure), citing ample authority that Congress was within its authority under the Commerce Clause to criminalize assertedly "local" drug trafficking based upon its effects on interstate commerce.  [R. 633, pp. 1–2 (citing *United States v. Hohn*, 293 F. App'x 395, 399 (6th Cir. 2008)].  The R&R recommends denial of Estey's third, seventh, and eighth grounds because his assertions that the government fabricated evidence regarding drug quantities and money amounts in an effort to increase his sentence are made entirely without explanation or evidentiary support.  *Id.* at 2–3.  The sixth ground, which asserts a failure to disclose exculpatory evidence, was similarly marked for denial as unsupported. *Id.* at 3. The R&R also recommends denial of these same six claims because Estey knowingly and voluntarily waived his right to assert them pursuant to the collateral attack waiver in the plea agreement.  *Id.* at 3–5 (citing *Davila v. United States*, 258 F.3d 448, 450–51 (6th Cir. 2001).

With respect to the various species of "prosecutorial misconduct" asserted in Ground Four, the R&R concludes that Estey's nonspecific allegations of fabricated evidence are insufficient to state a viable claim, and that his complaints regarding matters before the grand jury were waived by virtue of his guilty plea.  *Id.* at 6–7 (citing *United States v. Forney*, No. 20-1925, 2021 WL 7627521, at *1 (6th Cir. Dec. 14, 2021)).

The Magistrate Judge also recommends denial of Estey's claim in Ground Five that his counsel rendered ineffective assistance in three regards.  The R&R first notes that Estey again fails to identify or specify the "fabricated" evidence that he contends his counsel should have

moved to suppress, and that counsel did in fact join in co-defendant Dontay Rice's motion to suppress. *Id.* at 7–8 (referencing R. 114; R. 133; R. 136; R. 230). Second, the R&R concludes that Estey's claim that his counsel failed to prepare a "true defense" is without merit because Estey does not identify, let alone establish, any viable defense to the charges against him. *Id.* at 8.

Finally, the R&R concludes that Estey's counsel was not ineffective for failing to seek relief under the "safety valve" provision, found in 18 U.S.C. § 3553(f), for two reasons. First, the Court's 180-month sentence was based upon the parties' agreement and the advisory guidelines range of 188 to 235 months, not the 120-month mandatory statutory minimum. Second, Estey was not eligible for the safety valve in light of a three-point prior offense, and the Ninth Circuit's decision in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021) indicating otherwise is not persuasive. [R. 633, pp. 8–10].

In his Objections, Estey challenges the R&R's conclusions regarding his ineffective assistance claim insofar as it relates to the safety valve provision. *See* [R. 639]. Estey argues in essence that his attorney should have made an argument for safety valve relief unless the argument was foreclosed by Sixth Circuit precedent, which it was not at the time. *Id.* at 2–3. With respect to all of his other claims, Estey states only:

> While we object to [the R&R], we will not go point by point debating each point as we feel we have presented a clear argument to the court and that the court is well informed on our point of view and we stand by the arguments that have already been presented to the court.

*Id.* at 2.

In response, the government reiterates its positions, accepted in the R&R, that the safety valve was not relevant to Estey's sentence because the parties mutually agreed upon a sentence

of 180 months in the plea agreement, and that Estey was not eligible for safety valve relief in any event.  [R.641, pp. 2–6].

### III.

The district court reviews *de novo* "any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  *See also* 28 U.S.C. § 636(b)(1)(C); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Where no objections are made, the Court is not required to review the defendant's claims.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Likewise, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object."  *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).  It is true, of course, that *pro se* filings are construed more liberally than those made by those proceeding with the assistance of counsel.  *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985).  Still, "[o]bjections that merely state disagreements with the magistrate judge's conclusion or restate arguments previously presented to the magistrate judge are [also] improper."  *United States v. David*, 421 F. Supp. 3d 433, 440 (E.D. Ky. 2019), *aff'd*, No. 20-5835, 2021 WL 5782360 (6th Cir. Dec. 7, 2021).

As noted above, with the sole exception of his claim regarding the safety valve, in his Objection Estey stated only that he "stand[s] by the arguments that have already been presented to the court."  [R. 639, p. 2].  That statement manifestly fails to qualify as the kind of particularized objection required by Section 636(b)(1)(C).  Estey has therefore not filed any viable objection to the Magistrate's R&R with respect to any claim other than his ineffective assistance claim regarding the safety valve.  Estey has thus forfeited any and all objections to any other aspect of the R&R, and the Court therefore adopts those aspects of the R&R in their

entirety.  *See United States v. Shephard*, No. 5:09-CR-81-DLB, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (noting that where an "objection" simply repeats an argument presented to the magistrate, it fails "to put the Court on notice of any potential errors in the Magistrate's R&R."); *Holl v. Potter*, No. C-1-09-618, 2011 WL 4337038, at *1 (S.D. Ohio Sept. 15, 2011) ("[O]bjections that merely restate arguments raised in the memoranda considered by the Magistrate Judge are not proper, and the Court may consider such repetitive arguments waived.").

Nevertheless, in the interests of completeness, the Court has conducted a *de novo* review of the entire matter, and agrees with the R&R that the relief Estey seeks is not warranted.

## IV.

A federal prisoner may obtain post-conviction relief pursuant to 28 U.S.C. § 2255 if the federal court lacked jurisdiction to impose sentence, the sentence violates the Constitution or federal law, or the sentence exceeds the maximum permitted by statute.  28 U.S.C. § 2255(a); *McPhearson v. United States*, 675 F. 3d 553, 558–59 (6th Cir. 2012).  If the defendant alleges a constitutional violation, he must demonstrate that an error of constitutional magnitude occurred which had a "substantial and injurious effect or influence on the proceedings."  *Dimora v. United States*, 973 F. 3d 496, 502 (6th Cir. 2020).  If he alleges a non-constitutional error, the defendant must prove that the error constituted a fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process. *Snider v. United States*, 908 F. 3d 183, 189 (6th Cir. 2018).  The § 2255 movant bears the burden of proving factual assertions by a preponderance of the evidence.  *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003).

As a preliminary matter, the Court notes its agreement with the R&R that many of Estey's claims should be summarily denied because he failed to articulate either the factual basis or the legal grounds for the relief sought.  While *pro se* petitions are liberally construed, "active interpretation" of Estey's claims does not require the Court to make the petitioner's case for him. *Clark v. Johnson*, 413 F. App'x 804, 817 (6th Cir. 2011) ("Though the pleading standard for *pro se* litigants is liberal, it is not without its limits, and does not 'abrogate basic pleading essentials in *pro se* suits.'").  Much of Estey's § 2255 motion consists of conclusory assertions.  For example, in Ground Two Estey complains that "evidence" was gathered "illegally," but he does not specify what evidence he is talking about or explain how its collection was "illegal." [R. 617, p. 5]. Similarly, in Ground Three, Estey asserts that the prosecution "fabricated amounts of money for fabricated purposes" and "fabricated drug amounts for purposes of Sentencing Guidelines as opposed to alleged factual drug amounts for prosecuting purposes alone." *Id.* at 7. Estey again fails to explain how the money amounts or drug quantities were "fabricated" or shed any light on the basic nature of his claim.  Similarly, as the government notes with respect to Estey's claim that his attorney was ineffective by failing to conduct an adequate investigation, "Estey does not provide any indication as to the identities of the vital witnesses, what information they had, or how that information would have been favorable to him." [R. 622, p. 14]. And "most importantly, Estey did not argue that he told his attorney to interview any specific witnesses and that his attorney did not comply."  *Id.*

Such unexplained and sweeping statements fail to give adequate notice of the nature of his grounds for relief.  *Cf. Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim."); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (holding that conclusory

statement that counsel provided ineffective assistance is insufficient to raise the issue).  Estey's claims based upon them will be summarily denied.  These include the entirety of Ground Three, Ground Six, and Ground Seven; the first sentence of Ground Two directed towards "illegal" evidence; the first and last sentences of Ground Four directed toward "fabricated" evidence; and three of the claims of ineffective assistance of counsel in Ground Five, excepting only the claim regarding the safety valve.

As an independent basis for denial, the Court also substantially agrees with the R&R that many of Estey's claims are barred by the collateral attack waiver in his plea agreement.  As noted above, Estey agreed to waive his right to directly appeal or collaterally attack his conviction or sentence, but reserved his right to do so for claims of ineffective assistance of counsel or prosecutorial misconduct. *See* [R. 307 (Plea Agreement)]. The agreement also included a provision specifically waiving Estey's right to challenge the constitutionality of the statute of conviction. *Id.* at 5–6.

Estey's waiver is enforceable and bars his assertion of many of his claims. "A defendant in a criminal case may waive any right by means of a plea agreement." *United States v. Smith*, 960 F.3d 883, 886 (6th Cir. 2020) (cleaned up).  And Estey's responses to questions posed to him during the change of plea hearing established that his waiver was knowing and voluntary, rendering it enforceable. *Slusser v. United States*, 895 F.3d 437, 439 (6th Cir. 2018) ("It is well-settled that a knowing and voluntary waiver of a collateral attack is enforceable."); *Portis v. United States*, 33 F.4th 331, 335 (6th Cir. 2022) ("Waivers of the right to bring postconviction challenges remain enforceable after changes in law.") (cleaned up).  The waiver therefore bars Estey from pursuing any claim which is not predicated upon prosecutorial misconduct or ineffective assistance of counsel. *See* [R. 307, p. 5].  The R&R correctly concluded that this

precludes the assertion of the claims set forth in Grounds One, Two, Three, Seven, and Eight.[2] *See* [R. 633, pp. 3–4]

The Court disagrees, however, with the R&R's conclusion that the waiver reached Estey's sixth ground for relief. There he complains of the "denial of discovery" caused by the government "not allowing him to receive or view evidence that would have allowed him to prepare a proper defense." [R. 617, p. 11]. To the Court's ear, that sounds like a claim under *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963) (describing a viable claim as prejudice resulting from the intentional suppression or inadvertent failure to disclose evidence favorable to the accused). The Supreme Court has characterized a claim under *Brady* as a prosecutorial misconduct claim, *Banks v. Dretke*, 540 U.S. 668, 691 (2004), and the Sixth Circuit has long treated it as such, *United States v. Coker*, 514 F.3d 562, 570 n.2 (6th Cir. 2008). Particularly because waivers are narrowly construed, it is therefore at least arguable that Estey's Ground Six is not affected by the appeal and collateral attack waiver in his plea agreement.

However, Estey's sixth claim fails for other reasons. The R&R did not reach one of the government's alternative grounds for denial: that Estey's failure to appeal any ground for appellate review that was not waived in the plea agreement renders such claim procedurally defaulted. The Court agrees with the government's analysis. The procedural default doctrine bars "claims that could have been raised on direct appeal, but were not." *Ray v. United States*, 721 F. 3d 758, 761 (6th Cir. 2013). Therefore a "petitioner must raise his claims on direct appeal, otherwise, the claim is procedurally defaulted for purposes of § 2255 review." *Sullivan*

---

[2]  It is true that prosecutorial misconduct may arise in certain contexts where information the government believes or knows to be false is nonetheless presented, but the presentation must occur *at trial*. *Cf. Napue v. Illinois*, 360 U.S. 264 (1959), *Giglio v. United States*, 405 U.S. 150, 154 (1972). This precedent does not squarely apply in other contexts, such as plea negotiations.

*v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014).  Certain kinds of claims are excepted. For instance, a claim of ineffective assistance of counsel will generally not be entertained on direct appeal, permitting its assertion in the first instance in a Section 2255 motion.  *United States v. Franklin*, 415 F.3d 537, 555 (6th Cir. 2005) ("[I]t is our general practice not to consider ineffective assistance claims on direct appeal because they are better left to a post-conviction motion to vacate under 28 U.S.C. § 2255.").  In addition, if the defendant becomes aware of a possible *Brady* violation after trial but during direct appeal, he must raise the *Brady* issue on appeal or the claim is defaulted.  *Sullivan*, 587 F. App'x at 944.  However, if he can establish that he did not discover the *Brady* documents until after his direct appeal had concluded, he can demonstrate good cause and resulting prejudice to excuse the default.  *Cf. Apanovitch v. Houk*, 466 F.3d 460, 473–74 (6th Cir. 2006).

Here, Estey filed a direct appeal but later voluntarily dismissed it. *See* [R. 519; R. 572]. He therefore did not present any ground for review on direct appeal.  For any claim that is covered by the direct appeal waiver in the plea agreement, there would be no procedural default because Estey was foreclosed from appealing that issue.  However, any such claim would necessarily be barred by the collateral attack waiver, which is co-extensive with the direct appeal waiver.  As noted above, Ground Six asserts a *Brady* claim, a species of prosecutorial misconduct claim unaffected by the appeal waiver.  Because Estey did not present this claim on direct appeal, it is procedurally defaulted unless he provides evidence that demonstrates that he was unaware of the facts giving rise to his *Brady* claim until after his direct appeal was concluded.  *Apanovitch*, 466 F.3d at 473–74.  But Estey makes no allegation at all in his Section 2255 motion about how or when he came into possession of the documents in question, nor does he contend that he is actually innocent of the underlying offenses.  He therefore cannot

demonstrate cause and prejudice to permit him to pursue his procedurally defaulted *Brady* claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Albrecht v. Horn*, 485 F. 3d 103, 130 (3d Cir. 2007) (holding that the defendant did not show cause for his failure to raise a *Brady* claim "because these statements were available at the time of his direct appeal.").

To the extent not already resolved against him, the R&R correctly rejected Estey's jurisdictional challenge as without merit. Although not entirely clear, Estey appears to argue that it was beyond that authority of Congress to criminalize his conduct because "Mr. Estey's case is a state jurisdictional case rather than a federal one. . . . Mr. Estey would have only committed a state crime. Federal courts had no jurisdiction to determine whether sufficient evidence supported Mr. Estey committing this offense." [R. 627, p. 3 (citations omitted)]; *see also* [R. 634, p. 1 ("[I]t is very possible that this court had no personal jurisdiction over Mr. Estey.")]. Well-established precedent dooms this claim. Many modern criminal statutes were enacted by Congress pursuant to its authority under the Commerce Clause, U.S. Const. Art. 1, Sec. 8, Cl. 3. *See United States v. Lopez*, 514 U.S. 549, 630 (1995) (Breyer, J., dissenting). The statutes under which Estey was convicted, 21 U.S.C. §§ 841, 846, are among them. *See* 21 U.S.C. § 801(3). The Supreme Court has held that the Controlled Substances Act, which includes 21 U.S.C. §§ 841 and 846, is a valid exercise of Congress's authority under the Commerce Clause. *Gonzales v. Raich*, 545 U.S. 13–17 (2005); *United States v. Collier*, 246 F. App'x 312, 337 (6th Cir. 2007) ("Whether on its face or as applied to Defendant, 21 U.S.C. § 841(a)(1) does not violate the Commerce Clause."). Estey's jurisdictional claim is without merit. *See United States v. Russell*, 30 F. App'x 348, 351–52 (6th Cir. 2002) ("[Defendant] asserts in his pro se brief that the district court lacked subject matter jurisdiction over his offense because it occurred on private property within the state of Ohio, not on federal territory. This argument is patently meritless. Federal

courts have exclusive jurisdiction over offenses against the laws of the United States under 18

U.S.C. § 3231 and the permission of the states is not a prerequisite to exercise that

jurisdiction.").

Finally, Estey's claim that his attorney rendered ineffective assistance is without merit.

When asserting that counsel provided ineffective assistance, a movant must prove both deficient

performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Campbell v.

Bradshaw*, 674 F. 3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F. 3d 959, 964 (6th

Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the

evidence). In order to prove deficient performance, a movant must show that "counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment." *Strickland*, 466 U.S. at 687. A movant meets this burden by showing

"that counsel's representation fell below an objective standard of reasonableness" as measured

under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at

687–88. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting

of a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id.* at 689.

Deficient performance is considered prejudicial only when "counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In

order to prove prejudice, a movant "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at

694. When evaluating prejudice, courts generally must take into consideration the "totality of the

evidence before the judge or jury." *Id.* at 695. As to sentencing prejudice, there must be a

"reasonable probability that, but for the errors of counsel, his sentence would have been different." *United States v. Geedi*, 490 F. App'x 755, 761 (6th Cir. 2012).

As previously noted, Estey's Objection preserved only his challenge to his counsel's failure to seek relief under the safety valve, waiving the other aspects of this ground for relief. Even so, these aspects—that his attorney did not interview unidentified but "vital" witnesses, did not object to or seek suppression of fabricated evidence, and failed to prepare a meaningful defense—fail to provide any basis for relief. As noted by the government, these arguments are conclusory because Estey makes no effort to identify the witnesses or specify their expected testimony, identify the evidence or explain how it was fabricated, or set forth the viable defense he claims was not prepared. *See* [R. 622, pp. 14–16] And as noted in the R&R, Estey's attorney did in fact join in the motion to suppress filed by co-defendant Rice. [R. 633, pp. 7–8].

Estey also complains that the prosecution failed to abide by a vaguely described "promise" that he could challenge the drug quantities attributable to him during the sentencing hearing, and to include a stipulation to that effect in the plea agreement. [R. 617, pp. 8–9, 12]. There is some suggestion in his briefing that Estey contends his attorney was ineffective for failing to challenge the drug quantity during the sentencing hearing pursuant to this informal understanding. But this argument is foreclosed by the integration clause in the plea agreement itself, which expressly states that its written terms "supersede[] all prior understandings, if any, whether written or oral" and that "[n]o other promises or inducements have been or will be made to defendant in connection with this case." [R. 307, pp. 5–6]. In any event, when Estey wrote to his attorney prior to sentencing expressing concern that the drug quantity attributed to his conduct in the Presentence Report ("PSR") was too high, in April 2020 his attorney correctly reminded Estey that:

- 16 -

> The fact remains that your Plea Agreement is a Rule 11 "C" plea and means if the Court determines that the 180 month sentence is not appropriate and believes that a longer Guideline Sentence calculated by the Probation Office should be imposed, you will have the opportunity to withdraw your guilty plea. See Paragraph # 75 of the Report.

[R. 627-2]. In other words, the drug quantity attributed to Estey simply could not affect the length of his sentence unless it was so high that it caused the Court to reject his plea agreement entirely, something that did not happen. Because the parties agreed to a 180-month sentence in a Rule 11(c)(1)(C) plea agreement, the Court was bound to accept that sentence without modification or otherwise reject the entire plea agreement.

Finally, Estey's complaint that his attorney failed to argue that he was entitled to relief under the safety valve is fundamentally misguided, and fails to provide any basis for relief. A defendant convicted under 21 U.S.C. § 841(b)(1)(A) faces a mandatory minimum of 120 months imprisonment.[3] *United States v. Barron*, 940 F.3d 903, 913 (6th Cir. 2019). However, the "safety valve" found in 18 U.S.C. § 3553(f) directs the sentencing court to disregard a statutory mandatory minimum if the five requirements found in Section 3553(f)(1) through (5) are satisfied. The First Step Act of 2018 became effective on December 20, 2018, and amended subsection (f)(1) so that defendants with more than one criminal history point were potentially eligible for relief. Estey's PSR noted that he had a prior three-point offense, a disqualifier under subsection (f)(1)(B). *See* [R. 482]. But in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), a case decided eighteen months after Estey was sentenced and more than two years after Estey

---

[3] At various points in his briefing, Estey complains that his attorney was wrong when he told Estey that he faced a 180-month mandatory minimum sentence. This is incorrect. During plea negotiations, the prosecutor expressed his intention to file a notice pursuant to 21 U.S.C. § 851 to establish that Estey had a prior conviction for a "serious drug felony" or a "serious violent felony." If proven that he had such a conviction, that prior conviction would require "such person [to] be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(A).

was engaged in plea negotiations, the Ninth Circuit held that a defendant is eligible for safety valve relief unless he is disqualified under subsection (f)(1)(A), (f)(1)(B), and (f)(1)(C). This decision was the sole basis for Estey's initial construed Section 2255 motion. [R. 613].

The R&R recommends denial upon three grounds, two of which are that Estey had a disqualifying three-point prior offense and that *Lopez*'s reading of the safety valve is not persuasive. [R. 633, pp. 9, 10]. The Court is inclined to agree but need not rest its decision upon those grounds. After all, there is now a wide circuit split about how the post-First Step Act safety valve should be interpreted. On the one hand, upon which Estey relies, three courts of appeal have held that relief under the safety valve is precluded if and only if the defendant has all three disqualifying criteria. *See Lopez*, 998 F.3d at 437; *United States v. Garcon*, 54 F. 4th 1274, 1276 (11th Cir. 2022); *United States v. Jones*, 60 F.4th 230, 233 (4th Cir. 2023). On the other hand, four courts of appeal, including the Sixth Circuit, have held that the statute should be read conjunctively, but in the negative, meaning with respect to the disqualifying criteria that the defendant must **not** have. *United States v. Pace*, 48 F. 4th 741, 755-56 (7th Cir. 2022); *United States v. Palomares*, 52 F.4th 640, 642 (5th Cir. 2022); *United States v. Haynes*, 55 F.4th 1075, 1078 (6th Cir. 2022). The Eighth Circuit is also of this view but, notably, the United States Supreme Court has recently granted *certiorari* to resolve the circuit split. *See, e.g.*, *United States v. Pulsifer*, 39 F. 4th 1018, 1022 (8th Cir. 2022), *cert. granted*, 2023 WL 2227657 (Feb. 27, 2023). [4]

---

[4] As explained herein, the true issue raised by Estey's safety valve claim is *not* whether the safety valve applied, but rather, whether his attorney was ineffective for not raising the safety valve issue. The Supreme Court's review of this circuit split does not affect that analysis, and as a result, Estey's Motion for Stay, [R. 643], will be denied.

While the government is of the view that the terms of the safety valve are clearly disqualifying to Estey, three courts of appeal have held just the opposite. And Estey fairly counters that his attorney, consistent with his obligations to advocate effectively on behalf of his client, could and should make any relevant argument that is viable under existing law, even if the Sixth Circuit has not adopted or endorsed its underpinnings. After all, the defendants in each of the cases referenced directly above had to make their arguments without clear guidance from their respective courts of appeal. Counsel is therefore not necessarily effective when he foregoes making an argument on an open question under the law.

But Estey's claim that his counsel was ineffective for failing to press a safety valve claim still falls short. First, Estey's fails to explain *to whom* his attorney should have addressed his safety valve argument. Counsel could not have made such as argument to the Court: the terms of the Rule 11(c)(1)(C) plea agreement bound the Court to either accept the agreement and impose the 180-month sentence agreed upon by the parties or to reject the agreement entirely. As the government correctly noted, "defendant's claim also must fail because he was ultimately sentenced pursuant to the negotiated and agree-upon sentence contained in the binding Plea Agreement after the Court established a proper factual basis for the plea and sentence. Thus, a mandatory minimum was not the basis for the Court's ultimate sentence." [R. 632, p. 5].

Nor was counsel ineffective for not making such an argument to the government during plea negotiations. In March 2019, the government's sentencing calculations were based upon nearly twenty-eight kilograms of nearly pure methamphetamine attributable to Estey, resulting in an offense level of thirty-eight. He also faced possible upward adjustments of two points for operating a stash house and a four point adjustment for a leadership role. Even accounting for a three point reduction for acceptance of responsibility if he reached a plea deal, Estey's guideline

range was 360 months to life imprisonment.  *See* [R. 639-1, p. 1].  In June 2019, his attorney advised Estey that the prosecution had stated that it would not even consider agreeing to a sentence of less than fifteen years unless he provided accurate testimony incriminating his co-defendants.  [R. 640, pp. 2–3].  By October 2019, Estey had conveyed a plea offer of thirteen years imprisonment to the prosecution, but it was promptly rejected. [R. 642, p. 5]. The government reaffirmed its insistence upon a fifteen-year sentence. *Id.*  Estey's counsel noted that without a plea deal he faced a guidelines sentence of 210 to 262 months, or 324 to 405 months if the leadership enhancement was applied. *Id.*  He also relayed that several of Estey's co-defendants had already reached plea deals or would soon do so. *Id.* That fact increased the risk that a co-defendant would provide incriminating testimony against Estey should he proceed to trial, weakening his position in plea negotiations with the government.  Under the circumstances, counsel could have reasonably concluded that independent of whether the safety valve could apply to Estey, the fifteen-year sentence insisted upon by the government was the best deal he could reasonably expect to obtain for Estey.  Particularly when viewed through the deferential lens required when considering claims of ineffective assistance, Estey's claim falls far short of establishing that his attorney's conduct fell outside the wide range of reasonable professional assistance to which he was entitled.  *Strickland*, 466 U.S. at 689.[5]

---

[5]  As a matter entirely independent of whether Estey did or could have satisfied the safety valve requirements set forth in Section 3553(f)(1), he did not satisfy the requirements of Section 3553(f)(5) by completing a safety valve debriefing before the sentencing hearing.  And there is record evidence indicating that he would have refused to do so even if given the chance.  In June 2019, Estey's counsel told him by letter that the prosecution would only consider a sentence below the fifteen-year mandatory minimum if he participated in a meeting providing assistance of this kind and provided accurate, truthful, and forthright information about the conduct of his co-defendants.  [R. 640, p. 1–2].  The plea agreement does not indicate that Estey agreed to provide such assistance, *see* [R. 307], and other documents strongly indicate that Estey had already refused to cooperate in the manner required, *see* [R. 639-1, p. 1].

**V.**

Section 2255 requires a district court to hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The record in this matter conclusively demonstrates that Estey is not entitled to relief, obviating the need to hold an evidentiary hearing. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

**VI.**

The Court will deny Estey's motion for relief under § 2255 on both procedural and substantive grounds. Still, a certificate of appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, a movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court must make the "substantial showing" assessment on a claim-by-claim basis. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims"). And to issue a certificate of appealability for a dismissal on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

For the reasons set forth above, the Court concludes that jurists of reason would not find it debatable that Estey failed to make proper objection to the R&R with respect to any claim other than his ineffective assistance claim regarding the safety valve; that he procedurally

defaulted all but his claims under *Strickland*; that nearly all of his claims should be summarily denied as vague and conclusory; and that each of his claims is substantively without merit.  The Court will therefore deny a certificate of appealability as to any claim asserted in the motion.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

1.      The Court **DENIES** Estey's Motion for a Stay Pending Supreme Court's Decision, [**R. 643**].

2.      The Court **OVERRULES** Estey's Objections [**R. 639**].

3.      As supplemented by this Memorandum Opinion and Order, the Court **ADOPTS** Magistrate King's R&R [**R. 633**] as the Court's findings of fact and conclusions of law.

4.      The Court **DENIES** Estey's original and amended motions to vacate or set aside his conviction pursuant to 28 U.S.C. § 2255, [**R. 613, R. 617**].

5.      The Court **DENIES** a certificate of appealability as to any claim asserted in Estey's § 2255 motion.

This the 7th day of April, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Defendant, pro se
    Counsel of Record